## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| ANTHONY GREGOR, et al., on behalf of themselves and all others similarly situated, | Case No. 2:21-cv-3999 |
| Plaintiffs, | Magistrate Judge Elizabeth Preston Deavers |
| v. | |
| RICE DRILLING D, LLC, et al., | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to FED. R. CIV. P. 23(e), Plaintiffs Dorothy Bowman, Maple Ridge Farm, LLC, and OK Ridge Farm, LLC hereby move the Court for an order: (1) preliminarily approving the proposed class action settlement; (2) approving the proposed notice plan; and (3) setting a date for a final approval hearing. This motion is based on the incorporated memorandum of law, the declarations and exhibits filed herewith, the pleadings and papers in this action, and any additional arguments of counsel. Plaintiffs' counsel conferred with Defendants' counsel, and Defendants do not oppose this motion. A proposed order is attached.

Dated: July 21, 2025

Respectfully submitted,

*/s/ Matthew R. Wilson*

Sean E. Jacobs (88351)
EMENS WOLPER JACOBS &
JASIN LAW FIRM CO., LPA
One Easton Oval, Ste. 340
Columbus, OH 43219
Telephone: (614) 414-0888
Facsimile: (614) 414-0898
E-Mail:   sjacobs@ewjjlaw.com

Matthew R. Wilson (72925)
Jared W. Connors (101451)
MEYER WILSON WERNING CO., LPA
305 W. Nationwide Blvd
Columbus, OH 43201
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
E-Mail: mwilson@meyerwilson.com
            jconnors@meyerwilson.com

Scott K. Jones (69859)
SCOTT K. JONES LAW, LLC
3825 Edwards Rd., Suite 103
Cincinnati, OH 45209
Telephone:    (513) 410-2074
Facsimile:    (513) 536-6393
E-Mail:        sjones@scottkjoneslaw.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 1

    A.   Plaintiffs allege that they were underpaid royalties pursuant to a commonly negotiated contract. ................................................................... 1

    B.   The parties extensively litigated this case through the class|certification and *Daubert* stages. ................................................... 3

    C.   The parties negotiated a settlement following an arm's length mediation. .................................................................................................. 5

SUMMARY OF SETTLEMENT TERMS ......................................................................... 5

    A.   Proposed Settlement Class ............................................................... 5

    B.   Settlement Consideration ................................................................. 6

    C.   Attorneys' Fees and Service Awards ............................................... 8

    D.   Notice and Claims Administration .................................................. 8

LEGAL STANDARD ...................................................................................................... 9

ARGUMENT .................................................................................................................. 9

    I.   The Court should provisionally certify the Settlement Class. ...................... 9

    A.   The proposed class is ascertainable ..................................................... 10

    B.   Rule 23(a) is satisfied. ........................................................................ 10

        1.   Numerosity is satisfied because evidence demonstrates that there are hundreds of class members. ........................................... 11

        2.   Commonality is satisfied because at least one issue can be resolved through common evidence. ................................................ 12

        3.   Typicality is satisfied because the Named Plaintiffs' claims arise from the same course of conduct as those of the class. .......... 13

        4.   Adequacy is satisfied because the Named Plaintiffs and their counsel will diligently protect the interests of the class............................ 13

    C.   Rule 23(b)(3) is satisfied...................................................................... 14

        1.   Common questions predominate. ...................................................... 14

        2.   A class action is superior to individual adjudications. .................... 15

    II.   The Court should preliminarily approve the proposed settlement. ............. 17

    III.   The Court should approve the proposed notice plan. ................................... 19

CONCLUSION ............................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afro Am. Patrolmens League* v. *Duck*, 503 F.2d 294 (6th Cir. 1974) ........................ 11

*Amchem Prods., Inc.* v. *Windsor*, 521 U.S. (1997) ................................................. 15, 20

*Andrews* v. *State Auto Mut. Ins. Co.*, 2023 U.S. Dist. LEXIS 191571 (S.D. Ohio Oct.

    25, 2023) ........................................................................................................ 17

*Bacon* v. *Honda of Am. Mfg.*, 370 F.3d 565 (6th Cir. 2004) ...................................... 11

*Bailey* v. *Verso Corp.*, 337 F.R.D. 500 (S.D. Ohio 2021) ........................................ 9, 17

*Bechtel* v. *Fitness Equip. Servs.*, 339 F.R.D. 462 (S.D. Ohio 2021) ............................ 11

*Bentley* v. *Honeywell Int'l, Inc.*, 223 F.R.D. 471 (S.D. Ohio 2004) ............................ 11

*Bowling* v. *Pfizer*, 144 F. Supp. 3d 945 (S.D. Ohio 2015). ........................................ 17

*Bridging Communities Inc.* v. *Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) .... 15

*Campbell* v. *Pricewaterhousecoopers*, 253 F.R.D. 586 (E.D. Cal. 2008) ..................... 16

*City of N. Royalton* v. *McKesson Corp.*, 976 F.3d 664 (6th Cir. 2020) ...................... 13

*Cole* v. *City of Memphis*, 839 F.3d 530 (6th Cir. 2016) .............................................. 10

*Comp. Prop. Mgmt. LLC* v. *Build Realty, Inc.*,

    343 F.R.D. 378 (S.D. Ohio 2023) ................................................. 11, 14, 15

*Daffin* v. *Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) ............................................ 11

*Dalesandro* v. *Int'l Paper Co.*, 214 F.R.D. 473 (S.D. Ohio 2003) ............................... 12

*Doster* v. *Kendall*, 48 F.4th 608 (6th Cir. 2022) ........................................................ 9

*Doster* v. *Kendall*, 54 F.4th 398 (6th Cir. 2022) .................................................. 12, 13

*Fenley* v. *Wood Grp. Mustang, Inc.*, 325 F.R.D. 232 (S.D. Ohio 2018) ..................... 16

*Glazer* v. *Whirlpool Corp.*, 722 F.3d 838 (6th Cir. 2013)................................ 11, 14, 15

*Hicks* v. *State Farm Fire & Cas. Co.*, 965 F.3d 452 (6th Cir. 2020) ............... 9, 10, 15

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ............................................. 13

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) .......... 19

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001)................. 9

*Just Film, Inc.* v. *Buono*, 847 F.3d 1108 (9th Cir. 2017) ........................................... 16

*Martin* v. *Behr Dayton Thermal Prods. LLC*, 896 F.3d 405 (6th Cir. 2018) . 12, 14, 15

*Mays* v. *LaRose*, 951 F.3d 775 (6th Cir. 2020) ........................................................... 13

*Morrison* v. *Columbus Family Health Care LLC*, 2024 U.S. Dist. LEXIS 183745
   (S.D. Ohio Oct. 8, 2024)............................................................................................ 17

*Ostendorf* v. *Grange Indem. Ins. Co.*, 2020 U.S. Dist. LEXIS 163391 (S.D. Ohio Sep.
   8, 2020) ...................................................................................................................... 19

*Pansiera* v. *Home City Ice Co.*, 341 F.R.D. 223 (S.D. Ohio 2022)............................. 11

*Plagens* v. *Deckard*, 2024 U.S. Dist. LEXIS 84140 (N.D. Ohio May 9, 2024) .......... 18

*Rikos* v. *Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015)................................... 10

*Schumacher* v. *AK Steel Corp. Ret. Accumulation Pension Plan*,
   711 F.3d 675 (6th Cir. 2013) .................................................................................... 12

*Senter* v. *Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976) ....................................... 11

*Smith* v. *Local Cantina, LLC*, 2022 U.S. Dist. LEXIS 73598 (S.D. Ohio Apr. 19,
   2022) ........................................................................................................................... 19

*Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442 (2016) ....................................... 12, 14

*Wayside Church* v. *Van Buren County*, 103 F.4th 1215 (6th Cir. 2024)...................... 9

iii

*Young* v. *Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)....................... 10, 13

*Zehentbauer Family Land, LP* v. *Chesapeake Expl., LLC*, 935 F.3d 496 (6th Cir.

   2019) ................................................................................................................. 12

**Rules**

FED. R. CIV. P. 23(a)(1) ...................................................................................... 3

FED. R. CIV. P. 23 .............................................................................................. 9

FED. R. CIV. P. 23(a) ..................................................................................... 9, 10

FED. R. CIV. P. 23(a)(1) .................................................................................... 11

FED. R. CIV. P. 23(a)(2) .................................................................................... 12

FED. R. CIV. P. 23(a)(3) .................................................................................... 13

FED. R. CIV. P. 23(a)(4) .................................................................................... 13

FED. R. CIV. P. 23(b)(3) ......................................................................... 10, 14, 15

FED. R. CIV. P. 23(c)(2)(B) ............................................................................... 20

FED. R. CIV. P. 23(e) ......................................................................................... 9

FED. R. CIV. P. 23(e)(1)(B) ............................................................................ 9, 19

## INTRODUCTION

Plaintiffs are pleased to present this class action settlement to the Court for preliminary approval. To resolve this complex and long-running dispute over oil-and-gas royalty payments, Defendants Rice Drilling D, LLC, EQT Corp., EQT Production Co., and EQT Energy, LLC have agreed to a common fund settlement that will provide substantial monetary relief to Settlement Class Members. Based on the parties' initial research, before any deductions for class members who choose to opt out, the estimated value of the common fund is $22,086,769.31. *See* Joint Decl. of Class Counsel at ¶¶ 44–46.

The proposed Settlement is an excellent result for Settlement Class Members. The parties reached this agreement as a result of an arm's length mediation, which occurred only after the parties had completed fact discovery and briefed class certification and *Daubert*, followed by many months of additional negotiations. By settling now, rather than continuing to litigate this case through summary judgment, trial, and beyond, the parties avoid the risk, expense, and delay of further litigation. Therefore, Plaintiffs respectfully request that the Court issue an order: (1) preliminarily approving the proposed settlement; (2) approving the proposed notice plan; and (3) setting a date for a final approval hearing.

## FACTUAL BACKGROUND

### A. Plaintiffs allege that they were underpaid royalties pursuant to a commonly negotiated contract.

This class action arises from a dispute over royalties owed under an oil-and-gas lease. *See* Joint Decl. at ¶¶ 21–24. The Smith-Goshen lease is a contract negotiated by a landowners' group on behalf of numerous landowners that leased certain oil-and-gas rights located in Belmont County, Ohio, to Defendant Rice Drilling D, LLC, an oil and gas company that was later acquired by Defendant EQT Corp. The Smith-Goshen leases allow Defendants to extract natural gas from specific shale formations

beneath the leased properties in exchange for consideration which includes royalty payments equal to 20% of the gross proceeds received from the sale of that gas to an unaffiliated third party purchaser in an arm's-length transaction.

Plaintiffs are landowners who signed Smith-Goshen leases with Defendants. They filed this class action over four years ago, alleging that Defendants had underpaid them royalties for production under their Smith-Goshen leases. *See* ECF No. 1-1. The operative complaint alleges that Defendants are liable for breach of contract under the theories that they: (1) underpaid royalties by calculating royalty payments based on sales to an affiliate, rather than based on an arm's length transaction with an unaffiliated third-party purchaser; and (2) took improper deductions that were not allowed under the lease when calculating royalty payments. *See* Second Am. Compl. at ¶¶ 120–21. Defendants deny any liability and dispute the allegations of the operative complaint. Specifically, Defendants contest that Plaintiffs are paid royalties based on sales to an affiliate and that Defendants deduct post-production costs from Plaintiffs' royalties.

Following motion practice directed at the pleadings,[1] the parties proceeded with their initial rounds of written discovery. *See* Joint Decl. at ¶¶ 23–25. This process was complex and time-consuming. *Id.* at ¶ 25. Both parties propounded multiple sets of interrogatories, requests for production, and requests for admissions. *Id.* This process entailed reviewing thousands of pages of documents. *Id.*

---

[1] Defendants moved to dismiss Plaintiffs' claims for conversion and unjust enrichment, *see* ECF No. 9, after which Plaintiffs' amended the complaint to withdraw those claims, *see* First Am. Compl., ECF No. 10; Order Denying MTD as Moot, ECF No. 12. Plaintiffs later filed a Second Amended Complaint to add claims based on improper deductions, *see* Second Am. Compl., ECF No. 40, and Defendants moved to dismiss Plaintiffs' claim for declaratory relief, *see* ECF No. 41. After receiving full briefing, the Court ultimately granted that motion. ECF No. 55.

**B. The parties extensively litigated this case through the class certification and *Daubert* stages.**

After Plaintiffs' newly retained class action attorneys from the law firm Meyer Wilson (now Meyer Wilson Werning) appeared on December 6, 2023, the parties proceeded to litigate this case at a rapid speed. *See* Order Granting Motion to Substitute, ECF No. 51. In the span of about six months—much of which coincided with the holidays—Class Counsel was able to complete discovery and litigate this case through the class certification and *Daubert* stages. *See* Joint Decl. at ¶¶ 26–37.

Soon after the class action attorneys from Meyer Wilson appeared for Plaintiffs (*see* ECF No. 51), Class Counsel identified the need to straighten out the pleadings and revise the case schedule in order to prepare this case for class certification. *Id.* at ¶ 26. Following a status conference, the Court agreed to receive briefing regarding Plaintiffs' request to: (1) proceed with only three class representatives, rather than the 37 named in the operative complaint; (2) extend the deadline for submission of expert reports; and (3) allow for post class certification merits discovery. *See* 01/17/2024 Minute Entry. The parties submitted dueling letter briefs, as well as supplemental briefs at the Court's request, regarding whether the class representatives could be dropped under Fed. R. Civ. P. 21. *See* ECF Nos. 58–59, 61–63. The Court ultimately allowed Plaintiffs to proceed with only three class representatives, extended the deadline for disclosure of expert reports, and left for another day the question of whether post class certification discovery would be appropriate. Order re: Status Conference Held 01/17/2024, ECF No. 64.

Class Counsel moved quickly to assist the remaining class representatives—Plaintiff Dorothy Bowman and Joseph Duvall, the sole owner of Plaintiffs Maple Ridge Farm LLC and OK Ridge Farm LLC—with their discovery obligations. Joint Decl. at ¶¶ 27–29. This required Class Counsel to: (1) assist the class representatives with responding to new discovery requests from Defendants; (2) engage in substantial

3

ESI collection efforts, which was challenging and time-consuming for the class representatives, who are older, non-technical people; (3) review all newly collected documents and ESI for privilege and responsiveness; (4) spend considerable time preparing the class representatives for their depositions; and (5) defend the class representatives' depositions. *Id.* at ¶ 29.

Simultaneously, Class Counsel determined that it was important to keep interested class members informed, given the importance of this litigation for class members' oil-and-gas leases. *Id.* at ¶ 30. On February 12, 2024, Class Counsel held a town hall meeting at the Union Local Middle School in Belmont, Ohio, where they introduced the attorneys from Meyer Wilson to class members and answered questions about the litigation. *Id.*

After the class action attorneys from Meyer Wilson appeared in December 2023, Class Counsel determined that they would have to identify and retain a credible and qualified expert witness who could complete an entire report in the few months between when Meyer Wilson appeared in December 2023 and when the expert report disclosure deadline was set to expire in February 29, 2024. *Id.* at ¶¶ 31–35. This required Class Counsel to rapidly review a large volume of documents and engage in meet-and-confer efforts with Defendants' counsel to ensure that they had obtained the documents and information necessary for their expert to complete his report. *Id.* at ¶ 34. Class Counsel also had to defend their expert at his deposition. *Id.* at ¶ 35. These efforts resulted in the expert reports of C. Zachary Meyers, which Plaintiffs submitted in support of their motion for class certification. *See id.* at ¶ 33; ECF Nos. 73-9, 73-10.

Along the way, Class Counsel also had to push their case forward through offensive discovery. *Id.* at ¶¶ 25, 36–37. In addition to the document-related discovery described above, Class Counsel took the deposition of Defendants' Rule 30(b)(6)

designee, as well as Defendants' expert witnesses, Lesa Adair and David Posner. *Id.* at ¶¶ 36–37.

Those efforts culminated in May 2024, when Plaintiffs filed their Motion for Class Certification (ECF No. 72) and Motion to Exclude the Expert Report of David Posner (ECF No. 74). Joint Decl. at ¶ 38.

## C. The parties negotiate a settlement following an arm's length mediation.

Shortly after Plaintiffs filed their motion for class certification, the parties re-engaged in settlement negotiations. *See* Joint Decl. at ¶ 39. This resulted in the parties agreeing to an October 30, 2024 mediation before Mr. John W. Perry, a respected mediator in the energy industry with over 30 years of experience. *See* Class Action Settlement Agreement at pp. 1–2 ("S.A."); Joint Decl. at ¶ 39. The parties' negotiations were informed by the full discovery record, as well as additional informal discovery taken in connection with the mediation. S.A. at pp. 1–2; Joint Decl. at ¶¶ 40–41. The parties also submitted detailed letter briefs outlining their respective positions to Mr. Perry. Joint Decl. at ¶ 42. Negotiations were at all times adversarial and conducted at arm's length. *Id.* With Mr. Perry's assistance, the parties' reached a framework for their agreement. *Id.* at ¶¶ 46–48. They spent the next several months negotiating the finer points of the agreement as they sought to reduce it to writing, first through a term sheet, and then a full settlement agreement. *Id.* at ¶ 48.

## SUMMARY OF SETTLEMENT TERMS

### A. Proposed Settlement Class

The proposed Settlement Class is defined as follows:

[A]ll the class members, including their affiliates, predecessors and successors-in-interest, and any other persons who are, or were, lessor parties to a Smith Goshen Lease and received royalty payments from Defendants during the period from January 1, 2018 through December 31, 2024, according to the business records maintained by EQT Production Company. The Settlement Class excludes; (a) any person or entity who is currently

5

asserting Settled Claims in any action other than *Gregor* against Defendants; (b) any person or entity who receives royalty in kind pursuant to a Smith Goshen Lease; (c) any person or entity who has previously released EQT Production Co. and/or its affiliates from liability concerning or encompassing any or all Settled Claims; (d) the federal government; (e) the State of Ohio; (f) legally-recognized Indian Tribes; and (g) any person who serves as a judge in this civil action and his/her spouse.

S.A. § 1.28. Defendants will provide their business records to the Settlement Administrator for purposes of identifying and sending notice to the Settlement Class Members. *Id.* § 5.3.2. Based on the records produced in discovery, the number of Settlement Class Members consists of more than 500 persons and entities. Joint Decl. at ¶ 44.

### B. Settlement Consideration

The Settlement provides class members with access to substantial monetary relief paid from a common fund. S.A. § 5.1. The total amount of the common fund will be calculated by adding together the total number of "Royalty Payments" and "Bonus Payments" for the entire class. *Id.* § 5.2. The Royalty Payments will be calculated by multiplying $0.15 by the total MMBtu on which Defendants made royalty payments to Settlement Class Members pursuant to a Smith Goshen lease for production of natural gas from January 1, 2018 through December 31, 2024. *Id.* § 5.2.1. Known Settlement Class Members at that time had production of an estimated 72,689,129 MMBtu during the time period, so the estimated total Royalty Payments is approximately $10,903,369.31. Joint Decl. at ¶¶ 45–47. The total Bonus Payment is calculated by multiplying $450 by 24,852 acres, which is the approximate total acres that the full class leased to Defendants. S.A. § 5.2.2. The amount of the total Bonus Payments shall not be less than $11,183,400, not including any exclusions or opt-outs. *Id.* § 5.2.2. Together, the money from those two payments will constitute the common fund, which will be used to pay for notice and claims administration, attorneys' fees and expenses, and all payments to Settlement Class Members. *Id.* §

5.1. In addition, all Settlement Class Members are entitled to reimbursement for any Post-Production Costs and taxes deducted in the calculation of their royalty payments that have not yet been reimbursed. *Id.* § 5.4. Reimbursement of improper deductions will be made to class members directly in the regular course of their royalty payments, as opposed to a separate, special payment. *Id.*

Therefore, if there are no opt-outs, the total value of the common fund will be approximately $22,086,769.31. Joint Decl. at ¶ 47. After deducting attorneys' fees, litigation expenses, and administration costs, the remainder of the Settlement Funds will be distributed pro rata based on (1) the total MMBtu on which each Settlement Class Member was paid royalties by Defendants pursuant to a Smith Goshen lease for production from January 1, 2018 through December 31, 2024 for the Royalty Payments portion and (2) the total net mineral acres in a Production Unit which are owned by each Settlement Class Member and covered by a Smith Goshen Lease for the Bonus Payments portion. *See* S.A. § 5.2; Plan of Administration and Distribution, Exhibit E to S.A. at § 2(a).

In exchange for those cash benefits, Defendants will receive a release from liability for all claims related to "the payment of royalties by Defendants under the lease," except as specifically excluded, and all claims that Defendants improperly "extracted minerals from strata, subsurface formations, or shales" that were not granted under the lease. S.A. § 11.1.1. Each Settlement Class Member will also be required to execute a lease ratification (attached as Exhibit F to the Settlement Agreement) which clarifies (1) that Defendants must calculate royalty payments based on the TETCO M-2 Index Price per MMBtu of gas produced and sold by Defendants free of Post-Production Cost deductions, and (2) the formations granted pursuant to the lease. *Id.* § 6.

### C.  Attorneys' Fees and Service Awards

The Settlement authorizes Class Counsel to request Attorneys' Fees in an amount not to exceed one-third of the total value of the Settlement, plus $250,000 in reimbursement for Litigation Expenses. S.A. § 17.7.2. Class Counsel may also request a $10,000 service award for each of the two class representatives. *Id.* Plaintiffs will submit a separate motion substantiating the reasonableness of these requests.

### D.  Notice and Claims Administration

Subject to the Court's approval, the parties retained Schneider Downs & Co., Inc.—a well-respected accounting firm located in Columbus, Ohio—to serve as Settlement Administrator. Joint Decl. at ¶ 49. Schneider Downs will be responsible for administering the notice and claims process. S.A. §§ 1.26, 4, 5.3. All costs associated with notice and claims administration will be paid from the Settlement Fund. *Id.* § 5.1.

Within sixty days after the Court grants preliminary approval, Schneider Downs will mail the notice form (attached to the Settlement Agreement as Exhibit A) to all known Settlement Class Members. S.A. § 4. The proposed notice form describes in plain terms the nature of the action and the terms of the proposed settlement, and it advises class members of when and how they may object to the settlement or choose to opt-out. *See* Proposed Notice Form, Exhibit A to S.A.

All Settlement Class Members who do not submit a valid and timely Request for Exclusion will be bound by the Settlement. S.A. §§ 1.22, 1.29. Within sixty days of the Effective Date of the Settlement, after the Court has granted final approval, Schneider Downs will mail class members their Settlement Payment. Plan of Administration and Distribution, Exhibit B to S.A. at § 1(b). The Settlement Payment will be in the form of a check accompanied by a lease ratification (attached to the Settlement Agreement as Exhibit F) that the Settlement Class Member must sign in order to receive their payment. *Id.* § 1(b)–(d).

## LEGAL STANDARD

Class actions may only be settled on a classwide basis with court approval. FED. R. CIV. P. 23(e). "Settlement approval consists of three steps: '(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement.'" *Bailey* v. *Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001)). At the preliminary approval stage, the court must determine whether it will likely be able to (1) approve the proposed settlement as fair, reasonable, and adequate; and (2) certify the proposed settlement class for purposes of judgment. FED. R. CIV. P. 23(e)(1)(B). If both requirements are satisfied, the Court should direct notice to the proposed class and schedule a fairness hearing. *Id.*; *see also Wayside Church* v. *Van Buren County*, 103 F.4th 1215, 1222 (6th Cir. 2024) (noting that "preliminary approval of a class action settlement is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness").

## ARGUMENT

### I. The Court should provisionally certify the Settlement Class.

"The decision whether to certify a class is governed by Federal Rule of Civil Procedure 23, under which certification requires two showings: first, that the four 'prerequisites' of Rule 23(a) are met; and second, that the case fits within at least one of the three 'types of actions' described in Rule 23(b)." *Doster* v. *Kendall*, 48 F.4th 608, 612 (6th Cir. 2022) (*Doster I*). "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Hicks* v. *State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (citation omitted). As Plaintiffs previously explained in their Motion for Class Certification (ECF No. 72), this case satisfies all the prerequisites for class

certification under FED. R. CIV. P. 23(a) and (b)(3). Therefore, the Court should provisionally certify the Settlement Class.

### A. The proposed class is ascertainable.

The proposed class is ascertainable because it is defined by objective criteria. "Although Rule 23(a) has no express ascertainability requirement, many courts, including [the Sixth Circuit], have held that it is an implicit requirement of class certification." *Cole* v. *City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). Therefore, "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Hicks* v. *State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (citation omitted). Ascertainability is satisfied if it is possible to determine "whether class members are included or excluded from the class by reference to objective criteria." *Rikos* v. *Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (quoting *Young* v. *Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012)).

Here, Defendants, in order to facilitate the settlement, have taken substantial efforts beyond what is done in the ordinary course of business to ascertain potential class members. Specifically, Defendants, with the assistance of outside counsel, conducted an extensive review of its records over the course of six weeks to identify potential class members before the submission of this Motion. S.A. at 2. That supporting data will be provided to the Settlement Administrator, who may also receive Class Membership Forms from potential class members providing additional information for the Settlement Administrator to make a good faith determination as to whether a potential class member is a member of the Class. Plan of Administration and Distribution, Exhibit E to S.A. at § 1(a); *see also* S.A. § 5.3.2.

### B. Rule 23(a) is satisfied.

Under Rule 23(a), the plaintiff must establish that: "(1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of

law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy)." *Compound Prop. Mgmt. LLC* v. *Build Realty, Inc.*, 343 F.R.D. 378, 394 (S.D. Ohio 2023). Each of those prerequisites is satisfied here.

### 1. Numerosity is satisfied because evidence demonstrates that there are hundreds of class members.

Numerosity is satisfied because "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "While no strict numerical test exists to define numerosity under Rule 23(a)(1), 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Glazer* v. *Whirlpool Corp.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Daffin* v. *Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon* v. *Honda of Am. Mfg.*, 370 F.3d 565, 570 (6th Cir. 2004) (holding that 800 class members was sufficient); *cf. Afro Am. Patrolmens League* v. *Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (holding that 35 class members was sufficient); *Pansiera* v. *Home City Ice Co.*, 341 F.R.D. 223, 231 (S.D. Ohio 2022) ("Often, 'a class of 40 or more members is sufficient to meet the numerosity requirement.'"). Plaintiffs may establish numerosity by offering a "reasonable estimate" of the class size. *Bechtel* v. *Fitness Equip. Servs.*, 339 F.R.D. 462, 478 (S.D. Ohio 2021) (quoting *Bentley* v. *Honeywell Int'l, Inc.*, 223 F.R.D. 471, 480 (S.D. Ohio 2004)); *see also Senter* v. *Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976) (holding that courts may rely on "reasonable inferences" to support a finding of numerosity).

Here, it is undisputed that Defendants made royalty payments for production from January 1, 2018 through December 31, 2024 under hundreds of Smith-Goshen

leases, which is far too many for individual joinder. *See* Joint Decl. at ¶ 44. Therefore, numerosity is satisfied.

### 2. Commonality is satisfied because at least one issue can be resolved through common evidence.

Commonality is satisfied because this case presents "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). A "common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Martin* v. *Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 414 (6th Cir. 2018) (quoting *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 453 (2016)). "Rule 23(a)(2) requires that the class identify only one common question," but that question "must *matter* to the merits." *Doster* v. *Kendall*, 54 F.4th 398, 430 (6th Cir. 2022) (*Doster II*).

Commonality is satisfied here because Plaintiffs' breach of contract claim turns on whether Defendants' uniform practices regarding royalty payments breached the Smith-Goshen lease, which is a contract negotiated by a landowners' group on behalf of numerous landowners. When claims arise from a commonly negotiated contract, the court can readily adjudicate the existence and validity of the contract for all class members in one swoop. *See Schumacher* v. *AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 684 (6th Cir. 2013) (holding that the "scope and validity of the agreements" presented a common question because "[t]he critical language of the releases was identical for each plaintiff"). Moreover, the terms of a commonly negotiated contract lend themselves to a uniform interpretation. *See Zehentbauer Family Land, LP* v. *Chesapeake Expl., LLC*, 935 F.3d 496, 506 (6th Cir. 2019) (holding that the "interpretation of the [oil-and-gas] lease language under Ohio law" was a common question that would yield "a common answer"); *Dalesandro* v. *Int'l Paper Co.*, 214 F.R.D. 473, 483 (S.D. Ohio 2003) (holding that "the proper interpretation of the Plan" presented a "common question of law"). Those factors make it straightforward

to determine for all class members whether the defendant's treatment of the contracts constituted a breach. *See Zehentbauer* 935 F.3d at 506. Thus, contract formation, interpretation, and breach all present common questions.

### 3. Typicality is satisfied because the Named Plaintiffs' claims arise from the same course of conduct as those of the class.

Typicality is satisfied because the "claims or defenses" of the Named Plaintiffs "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A plaintiff's claims generally will be 'typical' of the class's when all of them arise from the same 'course of conduct' and assert the 'same legal theory.'" *Doster* v. *Kendall*, 54 F.4th 398, 438 (6th Cir. 2022) (citation omitted); *see also Mays* v. *LaRose*, 951 F.3d 775, 793 (6th Cir. 2020) (noting that commonality and typicality "tend to merge"). Here, Plaintiffs, like all Settlement Class Members, are Smith-Goshen leaseholders who were paid royalties for production from January 1, 2018 through December 31, 2024. Joint Decl. at ¶¶ 27–28. Their claims arise from the same contractual provisions and the same alleged practices. Typicality is satisfied.

### 4. Adequacy is satisfied because the Named Plaintiffs and their counsel will diligently protect the interests of the class.

Adequacy is satisfied because the Named Plaintiffs and their counsel "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Sixth Circuit has articulated a two-pronged adequacy test: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 532 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)); *City of N. Royalton* v. *McKesson Corp.*, 976 F.3d 664, 692 (6th Cir. 2020) (same). Both prongs are satisfied here. First, as discussed in the context of typicality, Plaintiffs' claims arise from the same course of conduct as the claims of the absent class members, so their interests are aligned with those of the

class. *See supra* Part I.B.3. Second, Plaintiffs vigorously prosecuted the class's interest by pursuing substantial discovery and litigating this case all the way to the class certification and *Daubert* stage. Joint Decl. at ¶¶ 21–38. In addition, Plaintiffs have retained counsel who are well-qualified and committed to vigorously prosecuting this case. *Id.* at ¶¶ 5–20. Adequacy is satisfied.

## C. Rule 23(b)(3) is satisfied.

Rule 23(b)(3) requires a showing (1) that common questions "predominate" over individual questions, and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Both predominance and superiority are satisfied here.

### 1. Common questions predominate.

Predominance is satisfied because "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more central issues to the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some other affirmative defenses peculiar to some individual class members." *Martin*, 896 F.3d at 414 (quoting *Tyson Foods*, 577 U.S. at 453). Here, as discussed under commonality, Plaintiffs would seek to establish almost every element of their breach of contract claim through common proof. *See supra* Part I.B.2. This strongly supports a finding of predominance. *Cf. Glazer*, 772 F.3d at 858 ("A plaintiff class need not prove that each element of a claim can be established by classwide proof"); *Comp. Prop. Mgmt.*, 343 F.R.D. at 406 (same).

At this time, there are no individual questions that undermine predominance. Defendants have not presented any substantial evidence of individualized affirmative defenses thus far, and they will not do so now that the parties have reached a settlement. *See Bridging Communities Inc.* v. *Top Flite Fin. Inc.*, 843 F.3d 1119, 1125–26 (6th Cir. 2016) (holding that affirmative defenses are only relevant to class certification if they are supported by legally sufficient, non-speculative evidence). And if the Court or a jury agrees with Plaintiff's theory of liability, class members have, on average over time, necessarily been paid less than what they were entitled, which means that the individualized question as to damages goes to the *quantum* of damages, rather than the *fact* of injury, which are well-established as non-issues under Rule 23(b)(3). *See Glazer*, 772 F.3d at 850 ("[I]ndividual damages calculations do not preclude class certification under Rule 23(b)(3)."); *Comp. Prop. Mgmt.*, 343 F.R.D. at 409 ("To be sure, determining the *quantum* of harm suffered, if any, requires an individualized assessment. But that is often the case in class actions, and it rarely prevents certification."). Therefore, common questions predominate.

### 2. A class action is superior to individual adjudications.

Superiority is satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This requirement "aims to achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Martin*, 896 F.3d at 415 (cleaned up) (quoting *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 615 (1997)). A class action is generally superior when "the cost of litigation would dwarf any potential recovery." *Glazer*, 772 F.3d at 861. "And when a threshold common issue predominates, a class action is often the preferable form of litigation." *Hicks*, 965 F.3d at 464.

In this case, although the amount of damages suffered per class member is not trivial, many class members may lack the resources necessary to realistically pursue their claims on an individual basis against a well-funded defendant worth billions of dollars, which would require them to retain costly experts and litigate against Defendants' skilled attorneys from Kirkland & Ellis and Steptoe & Johnson. *See Just Film, Inc.* v. *Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) ("The individual damages of each merchant are too small to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony."); *Campbell* v. *Pricewaterhousecoopers*, 253 F.R.D. 586, 605 (E.D. Cal. 2008) (holding that superiority was satisfied because "individual litigation against a well-funded defendant would be cost prohibitive"). But by aggregating those claims, the Court may resolve the threshold common questions of whether Defendants breached the lease agreement as alleged by Plaintiffs by virtue of their royalty calculation methodology, thereby adjudicating in a single stroke claims that otherwise may never have been heard. *See Hicks*, 965 F.3d at 464 (holding that superiority was satisfied "because a threshold common issue predominates . . . and because Plaintiffs' ability to obtain relief through individual damages suits is likely not economically feasible").

Moreover, Defendants, in order to facilitate the settlement, have taken substantial efforts beyond what is done in the ordinary course of business to make a class-wide settlement manageable.  As discussed previously, Defendants, with the assistance of outside counsel, conducted an extensive review of its records over the course of six weeks to identify potential class members before the submission of this Motion and will provide that supporting data to the Settlement Administrator.  S.A. at 2, § 5.3.2.  In addition, class members have no strong interest in individually controlling the litigation. *See Fenley* v. *Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 252 (S.D. Ohio 2018) (holding that "individual class members likely have little interest in

commencing or controlling separate actions due to," *inter alia*, "the real possibility that individual actions would be cost prohibitive"). Therefore, superiority is satisfied.

## II. The Court should preliminarily approve the proposed settlement.

After finding that provisional certification of the Settlement Class is appropriate, the Court must determine whether the settlement "is within the range of what ultimately could be considered fair, reasonable, and adequate—a determination left to the sound discretion of the Court." *Bowling* v. *Pfizer*, 144 F. Supp. 3d 945, 952 (S.D. Ohio 2015). A settlement is within the range of approval if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *Bailey* v. *Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021). Each of those factors is satisfied here.

*First*, the settlement is the product of good-faith, arm's length negotiation. "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Morrison* v. *Columbus Family Health Care LLC*, 2024 U.S. Dist. LEXIS 183745, *4 (S.D. Ohio Oct. 8, 2024) (citation omitted). "The participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Andrews* v. *State Auto Mut. Ins. Co.*, 2023 U.S. Dist. LEXIS 191571, *11 (S.D. Ohio Oct. 25, 2023) (cleaned up). In this case, the Settlement was the result of intensive, arm's-length negotiations under the guidance of an experienced and independent mediator, which ensured that the parties' negotiations were at all times adversarial. *See* S.A. at pp. 1–2; Joint Decl. at ¶¶ 39–48. This factor favors preliminary approval.

*Second*, the settlement has no obvious deficiencies. To the contrary, it reflects an excellent result given the significant risk, expense, and delay of further litigation. *See*

*Plagens* v. *Deckard*, 2024 U.S. Dist. LEXIS 84140, *25 (N.D. Ohio May 9, 2024) (approving settlement because "continuing litigation presents substantial risks," including that "Plaintiffs would need to prove loss causation and damages, which would involve conflicting expert testimony," and "[t]hese complexities also suggest that the litigation could extend for years, through appeal, without any certainty about the eventual outcome"). Plaintiffs are, of course, confident in the strength of their case, as are Defendants, who have hotly litigated the issues in the case and those being resolved by settlement. Joint Decl. at ¶ 51. But if this case had proceeded to litigation, Defendants likely would have challenged for class certification, moved for summary judgment, and opposed Plaintiffs' claims at trial. *Id.* In addition, it would likely take more than a year for the parties to brief class certification and summary judgment and to obtain rulings from the court. This means that a jury trial likely could be held no earlier than 2028. Therefore, the significant risk and delay that would accompany further litigation demonstrates that the settlement is well within the range of possible approval. *Id.* at ¶ 52.

*Third*, the settlement does not improperly grant preferential treatment to class representatives or segments of the class. The common fund will be divided pro rata among Settlement Class Members, with each member's proportional share determined by the amount of production they were paid on and the net mineral acres they own in Production Units which are covered by a Smith Goshen lease. S.A. § 5.2. This ensures that each Settlement Class Member's payment will be roughly proportional to their damages. *See Plagens*, 2024 U.S. Dist. LEXIS 84140, *28 (holding that settlement treated class members equitably because "claimants who suffered losses on their securities during the settlement class period will receive a *pro rata* distribution of the funds, proportional to their loss amount"). And the settlement provides for only modest, $10,000 service awards to Ms. Bowman and Mr. Duvall, *see id.* § 17.7.2, which is well within the range of possible approval. *See In re Southern*

*Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation."); *Smith* v. *Local Cantina, LLC*, 2022 U.S. Dist. LEXIS 73598, *20 (S.D. Ohio Apr. 19, 2022) (collecting cases where court approved $10,000 service award); *see also* Joint Decl. at ¶¶ 27–29 (noting that the class representatives had significant discovery obligations).

*Fourth*, the Settlement as a whole is within the range of possible approval. Class Counsel are highly experienced with complex litigation of this sort. *See* Joint Decl. at ¶¶ 5–11 (describing experience with class actions); *id.* at ¶¶ 12–18 (experience with oil-and-gas matters); *id.* at ¶¶ 19–20 (experience with complex litigation). Having litigated this case extensively and taken exhaustive discovery, their professional judgment is that the Settlement is in the best interest of the Settlement Class Members. *See id.* at ¶¶ 50–53; *Ostendorf* v. *Grange Indem. Ins. Co.*, 2020 U.S. Dist. LEXIS 163391, *6–7 (S.D. Ohio Sep. 8, 2020) ("Class counsel testify they are experienced in consumer class action litigation and have conducted the necessary discovery to confirm the amount of potential damages. . . . The Court gives weight to the judgment of experienced counsel that the settlement is in the best interests of the class."). Preliminarily approving the Settlement would also be in the public interest. *See id.* (noting that "class actions are inherently complex," so there is a "public interest favoring settlement"). Therefore, the Court should preliminarily approve the proposed settlement.

## III. The Court should approve the proposed notice plan.

If the court determines that it will "likely be able to" approve the settlement, it must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. FED. R. CIV. P. 23(e)(1)(B). Class members are entitled to

the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. FED. R. CIV. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods.* v. *Windsor*, 521 U.S. 591, 617 (1997). Notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). FED. R. CIV. P. 23(c)(2)(B).

Here, the parties have agreed to a robust notice program to be administered by Schneider Downs, a well-respected accounting firm. Joint Decl. at ¶ 49; S.A. §§ 1.26, 4. Defendants, in order to facilitate the settlement, have taken substantial efforts beyond what is done in the ordinary course of business to identify potential class members for the class notice program and have agreed to provide Schneider Downs with the records necessary to identify and send notice to the Settlement Class Members. Plan of Administration and Distribution, Exhibit E to S.A. at § 1(a). Schneider Downs will use that information to send the proposed notice form (attached to the Settlement Agreement as Exhibit A) to the Settlement Class Members. *Id.* The proposed notice form is clear and concise and informs Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to object to the Settlement, or request to be excluded. The notice plan thus ensures that Settlement Class Members' due process rights are amply protected, so this Court should approve it.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Dated: July 21, 2025

Respectfully submitted,

By: /s/ *Matthew R. Wilson*

Matthew R. Wilson (72925)*
Jared W. Connors (101451)
MEYER WILSON WERNING CO., LPA
305 W. Nationwide Blvd
Columbus, OH 43201
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
E-Mail:      mwilson@meyerwilson.com
             jconnors@meyerwilson.com

Sean E. Jacobs (88351)
EMENS WOLPER JACOBS & JASIN
LAW FIRM CO., LPA
One Easton Oval, Ste. 340
Columbus, OH 43219
Telephone: (614) 414-0888
Facsimile: (614) 414-0898
E-Mail:      sjacobs@ewjjlaw.com

Scott K. Jones (69859)
SCOTT K. JONES LAW, LLC
3825 Edwards Rd., Suite 103
Cincinnati, OH 45209
Telephone: (513) 410-2074
Facsimile: (513) 536-6393
E-Mail:      sjones@scottkjoneslaw.com

*Trial Attorney

*Counsel for Plaintiff and the Proposed Class*

21

## CERTIFICATE OF SERVICE

I certify that on July 21, 2025 the foregoing was filed using the Court's CM/ECF system and will therefore be electronically served to all parties' counsel of record.

/s/ *Matthew R. Wilson*
Matthew R. Wilson