## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ANTHONY GREGOR, et al., on behalf of themselves and all others similarly situated,

        Plaintiffs,

    v.

RICE DRILLING D, LLC, et al.,

        Defendants.

Case No. 2:21-cv-3999

Magistrate Judge Elizabeth Preston Deavers

## PLAINTIFFS' MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Pursuant to FED. R. CIV. P. 23(e), Plaintiffs Dorothy Bowman, Maple Ridge Farm, LLC, and OK Ridge Farm, LLC respectfully move the Court for an order granting final approval to the proposed class action settlement. This motion is based on the incorporated memorandum of law, the declarations and exhibits filed herewith, the pleadings and papers in this action, and any additional arguments of counsel. Plaintiffs' counsel conferred with Defendants' counsel, and Defendants do not oppose this motion.

Dated: January 5, 2026

Respectfully submitted,

*/s/ Matthew R. Wilson*

Matthew R. Wilson (72925)
Jared W. Connors (101451)
MEYER WILSON WERNING CO., LPA
305 W. Nationwide Blvd
Columbus, OH 43201
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
E-Mail: mwilson@meyerwilson.com
       jconnors@meyerwilson.com

Sean E. Jacobs (88351)
EMENS WOLPER JACOBS & JASIN LAW
FIRM CO., LPA
One Easton Oval, Ste. 340
Columbus, OH 43219
Telephone: (614) 414-0888
Facsimile: (614) 414-0898
E-Mail: sjacobs@ewjjlaw.com

Scott K. Jones (69859)
SCOTT K. JONES LAW, LLC
3825 Edwards Rd., Suite 103
Cincinnati, OH 45209
Telephone: (513) 410-2074
Facsimile: (513) 536-6393
E-Mail: sjones@scottkjoneslaw.com

*Counsel for Plaintiffs and the Proposed
Class*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 1

    A.    Plaintiffs allege that they were underpaid royalties pursuant to a commonly negotiated contract. ................................................................. 1

    B.    The parties extensively litigated this case through the class certification and *Daubert* stages................................................................................ 2

    C.    The parties negotiate a settlement followingan arm's length mediation. ................................................................................................... 5

SUMMARY OF SETTLEMENT TERMS ........................................................... 5

    A.    Proposed Settlement Class ................................................................... 5

    B.    Settlement Consideration ..................................................................... 6

    C.    Attorneys' Fees and Service Awards ................................................... 8

    D.    Notice and Claims Administration....................................................... 8

ARGUMENT .......................................................................................................... 8

    I.    The Court should certify the settlement class for purposes of entering judgment. ............................................................................................. 9

        A.    The proposed class is ascertainable..................................................... 10

        B.    Rule 23(a) is satisfied. ......................................................................... 11

            1. Numerosity is satisfied because evidence demonstrates that there are hundreds of class members. ..................................................... 11

            2. Commonality is satisfied because at least one issue can be resolved through common evidence. ............................................................ 12

            3. Typicality is satisfied because the Named Plaintiffs' claims arise from the same course of conduct as those of the class.................... 13

            4. Adequacy is satisfied because the Named Plaintiffs and their counsel will diligently protect the interests of the class.............................. 13

            C. Rule 23(b)(3) is satisfied. .................................................................. 14

                a.    Common questions predominate. ........................................... 14

                b.    A class action is superior to individual adjudications. ............ 15

    II.    The settlement class received sufficient notice to satisfy Rule 23 and due process. ................................................................................................. 17

    III.    The settlement is fair, reasonable, and adequate....................................... 18

        A.    The *UAW* factors are satisfied. ............................................................ 18

1. The settlement is free of fraud and collusion. ................................... 19

2. Continued litigation would be complex, expensive, and time-consuming ............................................................................... 19

3. The parties took extensive discovery. ............................................. 21

4. The class faced significant litigation risk. ...................................... 21

5. Class counsel and the class representatives believe that the settlement is in the best interest of the class. ................................. 22

6. Class members have reacted favorably to the settlement .............. 23

    a. The overwhelming majority of class members chose to remain in the class ............................................................................... 23

    b. The only objections to the settlement are unpersuasive. ........ 24

7. The settlement is in the public interest. .......................................... 27

B. The Rule 23(e)(2) factors are satisfied ................................................... 28

1. The class has been adequately represented ..................................... 28

2. The settlement was negotiated at arm's length. ............................. 28

3. The settlement provides adequate relief ......................................... 29

4. The settlement treats class members equitably. ............................. 30

CONCLUSION ....................................................................................................... 30

## INTRODUCTION

On July 24, 2025, the Court preliminarily approved a proposed class action settlement that would resolve this complex and long-running oil-and-gas litigation. *See* Preliminary Approval Order, ECF No. 94. Since then, notice has gone out to class members as directed by the Court and consistent with the terms of the Settlement Agreement. *See* Decl. of James H. Rumph on Behalf of Schneider Downs & Co., Inc. at 2–3 ("Schneider Downs Decl."). If the proposed settlement is approved, the class members who have chosen to remain in the case will receive meaningful cash relief in a case where liability and damages were and are hotly contested. Only two class members objected (on identical grounds), but their arguments are unpersuasive for the reasons set forth below.

Therefore, Plaintiffs move the Court for an order granting final approval of the proposed settlement and certifying the class for purposes of entering final judgment.

## FACTUAL BACKGROUND

### A. Plaintiffs allege that they were underpaid royalties pursuant to a commonly negotiated contract.

This class action arises from a dispute over royalties owed under an oil-and-gas lease. *See* Joint Decl. of Class Counsel in Support of Final Approval at ¶¶ 21–24 ("Joint Decl."). The Smith-Goshen lease is a contract negotiated by a landowners' group on behalf of numerous landowners that leased certain oil-and-gas rights located in Belmont County, Ohio, to Defendant Rice Drilling D, LLC, an oil and gas company that was later acquired by Defendant EQT Corp. The Smith-Goshen leases allow Defendants to extract natural gas from specific shale formations beneath the leased properties in exchange for consideration which includes royalty payments equal to 20% of the gross proceeds received from the sale of that gas to an unaffiliated third-party purchaser in an arm's-length transaction.

1

Plaintiffs are landowners who signed Smith-Goshen leases with Defendants. They filed this class action over four years ago, alleging that Defendants had underpaid them royalties for production under their Smith-Goshen leases. *See* Compl., ECF No. 1-1. The operative complaint alleges that Defendants are liable for breach of contract under the theories that they: (1) underpaid royalties by calculating royalty payments based on sales to an affiliate, rather than based on an arm's length transaction with an unaffiliated third-party purchaser; and (2) took improper deductions that were not allowed under the lease when calculating royalty payments. *See* Second Am. Compl. at ¶¶ 120–21. Defendants deny any liability and dispute the allegations in the operative complaint.

Following motion practice directed at the pleadings,[1] the parties proceeded with written discovery. *See* Joint Decl. at ¶¶ 23–25. This process was complex and time-consuming. *Id.* at ¶ 25. Both parties propounded multiple sets of interrogatories, requests for production, and requests for admissions. *Id.* This process entailed reviewing thousands of pages of documents. *Id.*

## B. The parties extensively litigated this case through the class certification and *Daubert* stages.

After Plaintiffs' newly retained class action attorneys from the law firm Meyer Wilson (now Meyer Wilson Werning) appeared on December 6, 2023, the parties proceeded to litigate this case at a rapid speed. *See* Order Granting Motion to Substitute, ECF No. 51. In the span of about six months, Class Counsel was able to

---

[1] Defendants moved to dismiss Plaintiffs' claims for conversion and unjust enrichment, *see* ECF No. 9, after which Plaintiffs' amended the complaint to withdraw those claims, *see* First Am. Compl., ECF No. 10; Order Denying MTD as Moot, ECF No. 12. Plaintiffs later filed a Second Amended Complaint to add claims based on improper deductions, *see* Second Am. Compl., ECF No. 40, and Defendants moved to dismiss Plaintiffs' claim for declaratory relief, *see* ECF No. 41. After full briefing, the Court ultimately granted that motion. ECF No. 55.

complete discovery and litigate this case through class certification and *Daubert*. *See* Joint Decl. at ¶¶ 26–38.

At this same time, Class Counsel identified the need to straighten out the pleadings and revise the case schedule in order to prepare this case for class certification. *Id.* at ¶ 26. Following a status conference, the Court agreed to receive briefing regarding Plaintiffs' request to: (1) proceed with three class representatives, rather than the 37 named in the complaint; (2) extend the deadline for submission of expert reports; and (3) allow for post class certification merits discovery. *See* 01/17/2024 Minute Entry. The parties submitted dueling letter briefs, as well as supplemental briefs at the Court's request, regarding whether the class representatives could be dropped under FED. R. CIV. P. 21. *See* ECF Nos. 58–59, 61–63. The Court ultimately allowed Plaintiffs to proceed with three class representatives, extended the deadline for disclosure of expert reports, and left for another day the question of whether post class certification discovery would be appropriate. Order re: Status Conference Held 01/17/2024, ECF No. 64.

Class Counsel moved quickly to assist the remaining class representatives— Plaintiff Dorothy Bowman and Joseph Duvall, the sole owner of Plaintiffs Maple Ridge Farm LLC and OK Ridge Farm LLC—with their discovery obligations. Joint Decl. at ¶¶ 27–29. This required Class Counsel to: (1) assist the class representatives with responding to new discovery requests from Defendants; (2) engage in substantial ESI collection efforts, which was challenging and time-consuming for the class representatives, who are non-technical people; (3) review all newly collected documents and ESI for privilege and responsiveness; (4) spend considerable time preparing the class representatives for their depositions; and (5) defend the class representatives' depositions. *Id.* at ¶ 29.

Simultaneously, Class Counsel determined that it was important to keep interested class members informed, given the importance of this litigation for class

members' oil-and-gas leases. *Id.* at ¶ 30. On February 12, 2024, Class Counsel held a town hall meeting for potential class members at the Union Local Middle School in Belmont, Ohio, where they introduced the attorneys from Meyer Wilson to class members and answered questions about the litigation. *Id.*

In December 2023, Class Counsel also determined that they would have to identify and retain a credible and qualified expert witness who could complete a report in the time between when Meyer Wilson appeared in December 2023 and when the expert report disclosure deadline was set to expire in February 29, 2024. *Id.* at ¶¶ 31–35. This required Class Counsel to identify and interview potential experts, rapidly review a large volume of documents, and engage in meet-and-confer efforts with Defendants' counsel to ensure that they had obtained the documents and information necessary for their expert to complete his report. *Id.* at ¶ 34. Class Counsel also had to defend Plaintiffs' expert at his deposition. *Id.* at ¶ 35. These efforts resulted in the expert report of C. Zachary Meyers, which Plaintiffs submitted in support of their motion for class certification. *See id.* at ¶ 33; ECF Nos. 73-9, 73-10.

Along the way, Class Counsel also had to push their case forward through offensive discovery. *Id.* at ¶¶ 25, 36–37. In addition to the document-related discovery described above, Class Counsel took the deposition of Defendants' Rule 30(b)(6) designee, as well as those of Defendants' expert witnesses, Lesa Adair and David Posner. *Id.* at ¶¶ 36–37.

Those efforts culminated in May 2024, when Plaintiffs filed their Motion for Class Certification (ECF No. 72) and Motion to Exclude the Expert Report of David Posner (ECF No. 74). Joint Decl. at ¶ 38.

## C. The parties negotiate a settlement following an arm's length mediation.

Shortly after Plaintiffs filed their motion for class certification, the parties re-engaged in settlement negotiations. *See* Joint Decl. at ¶ 39. This resulted in the parties agreeing to an October 30, 2024, mediation with Mr. John W. Perry, a respected mediator in the energy industry with over 30 years of experience. *See* Declaration of John W. Perry at ¶¶ 2–3 ("Perry Decl."); Class Action Settlement Agreement at pp. 1–2 ("S.A."); Joint Decl. at ¶ 39. The parties' negotiations were informed by the full discovery record, as well as additional informal discovery taken in connection with the mediation. *See* Perry Decl. at ¶ 4; S.A. at pp. 1–2; Joint Decl. at ¶¶ 40–41. The parties also submitted detailed letter briefs outlining their respective positions to Mr. Perry. *See* Perry Decl. at ¶ 4; Joint Decl. at ¶ 42. Negotiations were at all times adversarial and conducted at arm's length. *See* Perry Decl. at ¶ 5; Joint Decl. at ¶ 43. With Mr. Perry's assistance, the parties reached a framework for their agreement. *See* Perry Decl. at ¶ 5–6; Joint Decl. at ¶ 45. They spent the next several months negotiating the finer points of the agreement as they sought to reduce it to writing, first through a term sheet, and then a full settlement agreement. Joint Decl. at ¶ 46.

## SUMMARY OF SETTLEMENT TERMS

### A. Proposed Settlement Class

The proposed Settlement Class is defined as follows:

[A]ll the class members, including their affiliates, predecessors and successors-in-interest, and any other persons who are, or were, lessor parties to a Smith Goshen Lease and received royalty payments from Defendants during the period from January 1, 2018 through December 31, 2024, according to the business records maintained by EQT Production Company. The Settlement Class excludes; (a) any person or entity who is currently asserting Settled Claims in any action other than *Gregor* against Defendants; (b) any person or entity who receives royalty in kind pursuant to a Smith Goshen Lease; (c) any person or entity who has previously released EQT Production Co. and/or its affiliates from liability concerning or encompassing any or all Settled Claims; (d) the federal government; (e) the

State of Ohio; (f) legally-recognized Indian Tribes; and (g) any person who serves as a judge in this civil action and his/her spouse.

S.A. § 1.28. Defendants provided business records to the Settlement Administrator for purposes of identifying and sending notice to the Settlement Class Members. *Id.* § 5.3.2. Schneider Downs sent notice to over 1,500 likely class members using Defendants' business records. Schneider Downs Decl. at 2.

## B. Settlement Consideration

The Settlement provides class members with substantial monetary relief paid from a common fund. S.A. § 5.1. The total amount of the common fund was calculated by adding together the total number of "Royalty Payments" and "Bonus Payments" for the entire class. *Id.* § 5.2. The Royalty Payments were calculated by multiplying $0.15 by the total MMBtu on which Defendants made royalty payments to Settlement Class Members pursuant to a Smith Goshen lease for production of natural gas from January 1, 2018 through December 31, 2024. *Id.* § 5.2.1. The total Bonus Payment was calculated by multiplying $450 by the total number of acres the class leased to Defendants. S.A. § 5.2.2.  In addition, all Settlement Class Members are entitled to reimbursement for any Post-Production Costs and taxes deducted in the calculation of their royalty payments that have not yet been reimbursed, if any.  *Id.* § 5.4. Reimbursement of improper deductions will be made to class members directly in the regular course of their royalty payments, as opposed to a separate, special payment. *Id*. Together, the money from those payments constitutes the common fund, which will be used to pay for notice and claims administration, attorneys' fees and expenses, and all payments to Settlement Class Members. *Id.* § 5.1. The common fund reflects a pro rata reduction in value based on the production and acreage attributable to any exclusions or opt-outs. *Id.*

After adjustments for class members who chose to opt-out, the total value of the common fund is approximately $15.6 million. Schneider Downs Decl. at 4.[2] After deducting attorneys' fees, litigation expenses, and administration costs, the remainder of the Settlement Funds will be distributed pro rata based on (1) the total MMBtu on which each Settlement Class Member was paid royalties by Defendants pursuant to a Smith Goshen lease for production from January 1, 2018 through December 31, 2024 for the Royalty Payments portion and (2) the total net mineral acres in a Production Unit which are owned by each Settlement Class Member and covered by a Smith Goshen Lease for the Bonus Payments portion. *See* S.A. § 5.2; Plan of Administration and Distribution, Exhibit E to S.A. at § 2(a).

In exchange for those cash benefits, Defendants will receive a release from liability for all claims related to "the payment of royalties by Defendants under the lease," except as specifically excluded, and all claims that Defendants improperly "extracted minerals from strata, subsurface formations, or shales" that were not granted under the lease. S.A. § 11.1.1. The release thus includes both the breach of contract claims asserted in the complaint and any trespass claims related to the lease that could have been pleaded against Defendants as part of this case. To receive payment under the Settlement, each Settlement Class Member will also be required to execute a lease ratification (attached as Exhibit F to the Settlement Agreement) which clarifies (1) that Defendants must calculate royalty payments based on the TETCO M-2 Index Price per MMBtu of gas produced and sold by Defendants free of Post-Production Cost deductions, and (2) the formations granted pursuant to the lease. *Id.* § 6.

---

[2] The Settlement Administrator is still in the process of calculating individual payments to putative class members and therefore the exact final amount of the settlement fund may vary slightly from this number. *See* Schneider Downs Decl. at 4.

## C.  Attorneys' Fees and Service Awards

The Settlement authorizes Class Counsel to request (1) Attorneys' Fees in an amount not to exceed one-third of the total value of the Settlement, plus up to $250,000 in reimbursement for Litigation Expenses; and (2) a $10,000 service award for each of the two class representatives. S.A. § 17.7.2. Class Counsel filed a separate Motion for Attorneys' Fees addressing the reasonableness of those requests. *See* ECF No. 96.

## D.  Notice and Claims Administration

The parties retained Schneider Downs & Co., Inc.—a well-respected accounting firm with offices in Columbus, Ohio—to serve as Settlement Administrator. Schneider Downs Decl. at 1. The parties chose an accounting firm as the administrator because of the particular complexities in determining each class member's specific payment. Schneider Downs is responsible for administering the notice and claims process. S.A. §§ 1.26, 4, 5.3. All costs associated with notice and claims administration will be paid from the Settlement Fund. *Id.* § 5.1.

The Court previously approved the notice plan. *See* Preliminary Approval Order, ECF No. 94 at PageID 1792–93. Schneider Downs has successfully implemented the notice plan and directed notice to all class members whose addresses were reasonably accessible. *See* Schneider Downs Decl. at 2–3; S.A. at 2 ("Defendants, with the assistance of outside counsel, conducted an additional review of its records over the course of six weeks to determine Settlement Class Members and the acreage covered by Smith Goshen Leases and who should receive Class Notice.").

## ARGUMENT

A motion for final approval presents three questions: "(1) whether the proposed Settlement Class should be certified; (2) whether the way the Settlement Class was notified is adequate; and (3) whether the settlement is fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure." *Hawkins v. Cintas Corp.*,

2024 U.S. Dist. LEXIS 153614, *9 (S.D. Ohio Aug. 27, 2024). In this case, final class certification is appropriate under FED. R. CIV. P. 23(b)(3), the class received adequate notice, and the settlement provides fair, reasonable, and adequate relief to class members. Therefore, the Court should grant final approval.

## I.    The Court should certify the settlement class for purposes of entering judgment.

In its preliminary approval order, the Court conditionally certified the Settlement Class, provisionally finding that the requirements of Rule 23(a) and (b)(3) were satisfied. *See* Preliminary Approval Order, ECF No. 94 at PageID 1790–91. Nothing has changed since then that would alter those conclusions. *See In re Cinfed Fed. Credit Union Data Breach Litig.*, 2025 U.S. Dist. LEXIS 109746, *15 (S.D. Ohio June 10, 2025) ("In its Opinion and Order preliminarily certifying the class, the Court concluded that the class fulfills each of those obligations. Nothing has changed since then—facts or law—that would disrupt the Court's previous determinations."). But a preliminary approval order does not actually certify a class. *Wayside Church v. Van Buren County*, 103 F.4th 1215, 1222 (6th Cir. 2024) ("What a Rule 23(e)(1) order [granting preliminary approval] does not do is actually certify a proposed class."). Rather, the Court must "certify the class for purposes of judgment on the proposal" in its final approval order. FED. R. CIV. P. 23(e)(1)(B)(ii). So in an abundance of caution, Plaintiffs again set forth their Rule 23 analysis below, which is largely identical to the arguments made in their preliminary approval motion.

"The decision whether to certify a class is governed by Federal Rule of Civil Procedure 23, under which certification requires two showings: first, that the four 'prerequisites' of Rule 23(a) are met; and second, that the case fits within at least one of the three 'types of actions' described in Rule 23(b)." *Doster* v. *Kendall*, 48 F.4th 608, 612 (6th Cir. 2022) (*Doster I*). "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Hicks* v. *State Farm Fire & Cas. Co.*, 965 F.3d 452, 464

(6th Cir. 2020) (citation omitted). This case satisfies all the prerequisites for class certification under FED. R. CIV. P. 23(a) and (b)(3), so the Court should certify the Settlement Class for purposes of entering final judgment.

### A. The proposed class is ascertainable.

The proposed class is ascertainable because it is defined by objective criteria. "Although Rule 23(a) has no express ascertainability requirement, many courts, including [the Sixth Circuit], have held that it is an implicit requirement of class certification." *Cole* v. *City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). Therefore, "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Hicks* v. *State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (citation omitted). Ascertainability is satisfied if it is possible to determine "whether class members are included or excluded from the class by reference to objective criteria." *Rikos* v. *Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (quoting *Young* v. *Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012)).

Here, the proposed Settlement Class is clearly defined, and Defendants, in order to facilitate the settlement, have taken substantial efforts beyond what is done in the ordinary course of business to ascertain potential class members. Specifically, Defendants, with the assistance of outside counsel, conducted an extensive review of its records over the course of six weeks to identify potential class members before the submission of this Motion. S.A. at 2. That supporting data was provided to the Settlement Administrator, who also received Class Membership Forms from potential class members providing additional information for the Settlement Administrator to make a good faith determination as to whether a potential class member is a member of the Class. Plan of Administration and Distribution, Exhibit E to S.A. at § 1(a); *see also* S.A. § 5.3.2. Therefore, the Settlement Class is ascertainable.

**B.  Rule 23(a) is satisfied.**

Under Rule 23(a), the plaintiff must establish that: "(1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy)." *Compound Prop. Mgmt. LLC* v. *Build Realty, Inc.*, 343 F.R.D. 378, 394 (S.D. Ohio 2023). Each of those prerequisites is satisfied here.

**1.  Numerosity is satisfied because evidence demonstrates that there are hundreds of class members.**

Numerosity is satisfied because "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "While no strict numerical test exists to define numerosity under Rule 23(a)(1), 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Glazer* v. *Whirlpool Corp.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Daffin* v. *Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon* v. *Honda of Am. Mfg.*, 370 F.3d 565, 570 (6th Cir. 2004) (holding that 800 class members was sufficient); *cf. Afro Am. Patrolmens League* v. *Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (holding that 35 class members was sufficient); *Pansiera* v. *Home City Ice Co.*, 341 F.R.D. 223, 231 (S.D. Ohio 2022) ("Often, 'a class of 40 or more members is sufficient to meet the numerosity requirement.'"). Plaintiffs may establish numerosity by offering a "reasonable estimate" of the class size. *Bechtel* v. *Fitness Equip. Servs.*, 339 F.R.D. 462, 478 (S.D. Ohio 2021) (quoting *Bentley* v. *Honeywell Int'l, Inc.*, 223 F.R.D. 471, 480 (S.D. Ohio 2004)); *see also Senter* v. *Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976) (holding that courts may rely on "reasonable inferences" to support a finding of numerosity).

Here, the Settlement Administrator has analyzed Defendants' business records and identified hundreds of class members who have chosen to remain in the class, which is far too many for individual joinder. *See* Schneider Downs Decl. at 3. Therefore, numerosity is satisfied.

### 2. Commonality is satisfied because at least one issue can be resolved through common evidence.

Commonality is satisfied because this case presents "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). A "common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Martin* v. *Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 414 (6th Cir. 2018) (quoting *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 453 (2016)). "Rule 23(a)(2) requires that the class identify only one common question," but that question "must *matter* to the merits." *Doster* v. *Kendall*, 54 F.4th 398, 430 (6th Cir. 2022) (*Doster II*).

Commonality is satisfied here because Plaintiffs' breach of contract claim turns on whether Defendants' uniform practices regarding royalty payments breached the Smith-Goshen lease, which is a contract negotiated by a landowners' group on behalf of numerous landowners. When claims arise from a commonly negotiated contract, the court can readily adjudicate the existence and validity of the contract for all class members in one swoop. *See Schumacher* v. *AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 684 (6th Cir. 2013) (holding that the "scope and validity of the agreements" presented a common question because "[t]he critical language of the releases was identical for each plaintiff"). Moreover, the terms of a commonly negotiated contract lend themselves to a uniform interpretation. *See Zehentbauer Family Land, LP* v. *Chesapeake Expl., LLC*, 935 F.3d 496, 506 (6th Cir. 2019) (holding that the "interpretation of the [oil-and-gas] lease language under Ohio law" was a common question that would yield "a common answer"); *Dalesandro* v. *Int'l Paper Co.*,

12

214 F.R.D. 473, 483 (S.D. Ohio 2003) (holding that "the proper interpretation of the Plan" presented a "common question of law"). Those factors make it straightforward to determine for all class members whether the defendant's treatment of the contracts constituted a breach. *See Zehentbauer* 935 F.3d at 506. Thus, contract formation, interpretation, and breach all present common questions.

### 3. Typicality is satisfied because the Named Plaintiffs' claims arise from the same course of conduct as those of the class.

Typicality is satisfied because the "claims or defenses" of the Named Plaintiffs "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A plaintiff's claims generally will be 'typical' of the class's when all of them arise from the same 'course of conduct' and assert the 'same legal theory.'" *Doster* v. *Kendall*, 54 F.4th 398, 438 (6th Cir. 2022) (citation omitted); *see also Mays* v. *LaRose*, 951 F.3d 775, 793 (6th Cir. 2020) (noting that commonality and typicality "tend to merge"). Here, Plaintiffs, like all Settlement Class Members, are Smith-Goshen leaseholders who were paid royalties for production from January 1, 2018 through December 31, 2024. Joint Decl. at ¶¶ 27–28. Their claims arise from the same contractual provisions and the same alleged practices. Typicality is satisfied.

### 4. Adequacy is satisfied because the Named Plaintiffs and their counsel will diligently protect the interests of the class.

Adequacy is satisfied because the Named Plaintiffs and their counsel "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Sixth Circuit has articulated a two-pronged adequacy test: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 532 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)); *City of N. Royalton* v. *McKesson Corp.*, 976 F.3d 664, 692 (6th Cir. 2020) (same). Both prongs are satisfied here. First, as discussed in the

context of typicality, Plaintiffs' claims arise from the same course of conduct as the claims of the absent class members, so their interests are aligned with those of the class. *See supra* Part I.B.3. Second, Plaintiffs vigorously prosecuted the class's interest by pursuing substantial discovery and litigating this case all the way to the class certification and *Daubert* stage. Joint Decl. at ¶¶ 21–38. In addition, Plaintiffs have retained counsel who are well-qualified and who have vigorously prosecuted this case. *Id.* at ¶¶ 5–20. Adequacy is satisfied.

### C.  Rule 23(b)(3) is satisfied.

Rule 23(b)(3) requires a showing (1) that common questions "predominate" over individual questions, and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Both predominance and superiority are satisfied here.

### a.  Common questions predominate.

Predominance is satisfied because "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more central issues to the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some other affirmative defenses peculiar to some individual class members." *Martin*, 896 F.3d at 414 (quoting *Tyson Foods*, 577 U.S. at 453). Here, as discussed under commonality, Plaintiffs would seek to establish almost every element of their breach of contract claim through common proof. *See supra* Part I.B.2. This strongly supports a finding of predominance. *Cf. Glazer*, 772 F.3d at 858 ("A plaintiff class need not prove that

each element of a claim can be established by classwide proof"); *Comp. Prop. Mgmt.*, 343 F.R.D. at 406 (same).

At this time, there are no individual questions that undermine predominance. Defendants have not presented any substantial evidence of individualized affirmative defenses thus far, and they will not do so now that the parties have reached a settlement. *See Bridging Communities Inc.* v. *Top Flite Fin. Inc.*, 843 F.3d 1119, 1125–26 (6th Cir. 2016) (holding that affirmative defenses are only relevant to class certification if they are supported by legally sufficient, non-speculative evidence). And if the Court or a jury agrees with Plaintiff's theory of liability, class members have necessarily been paid less than what they were entitled, which means that the individualized question as to damages goes to the *quantum* of damages, rather than the *fact* of injury, which are well-established as non-issues under Rule 23(b)(3). *See Glazer*, 772 F.3d at 850 ("[I]ndividual damages calculations do not preclude class certification under Rule 23(b)(3)."); *Comp. Prop. Mgmt.*, 343 F.R.D. at 409 ("To be sure, determining the *quantum* of harm suffered, if any, requires an individualized assessment. But that is often the case in class actions, and it rarely prevents certification."). Therefore, common questions predominate.

### b.  A class action is superior to individual adjudications.

Superiority is satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This requirement "aims to achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Martin*, 896 F.3d at 415 (cleaned up) (quoting *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 615 (1997)). A class action is generally superior when "the cost of litigation would dwarf any potential recovery." *Glazer*, 772 F.3d at 861. "And when a threshold

common issue predominates, a class action is often the preferable form of litigation." *Hicks*, 965 F.3d at 464.

In this case, although the amount of damages suffered per class member is not trivial, many class members lack the resources and the single-mindedness or purpose necessary to realistically pursue their claims on an individual basis against a well-funded defendant worth billions of dollars, which would require them to retain costly experts and litigate against Defendants' skilled attorneys from Kirkland & Ellis and Steptoe & Johnson. *See Just Film, Inc.* v. *Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) ("The individual damages of each merchant are too small to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony."); *Campbell* v. *Pricewaterhousecoopers*, 253 F.R.D. 586, 605 (E.D. Cal. 2008) (holding that superiority was satisfied because "individual litigation against a well-funded defendant would be cost prohibitive"). But by aggregating those claims, the Court may resolve the threshold common questions of whether Defendants breached the lease agreement as alleged by Plaintiffs by virtue of their royalty calculation methodology, thereby adjudicating in a single stroke claims that otherwise may never have been heard. *See Hicks*, 965 F.3d at 464 (holding that superiority was satisfied "because a threshold common issue predominates . . . and because Plaintiffs' ability to obtain relief through individual damages suits is likely not economically feasible").

Moreover, Defendants, in order to facilitate the settlement, have taken substantial efforts beyond what is done in the ordinary course of business to make a class-wide settlement manageable. As discussed previously, Defendants, with the assistance of outside counsel, conducted an extensive review of their records to identify potential class members before the submission of this Motion and have provided that supporting data to the Settlement Administrator. S.A. at 2, § 5.3.2. In addition, the remaining class members have no strong interest in individually

16

controlling the litigation. *See Fenley* v. *Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 252 (S.D. Ohio 2018) (holding that "individual class members likely have little interest in commencing or controlling separate actions due to," *inter alia*, "the real possibility that individual actions would be cost prohibitive"). Therefore, superiority is satisfied, and class certification is proper under Rule 23(b)(3).

## II. The settlement class received sufficient notice to satisfy Rule 23 and due process.

The court-approved notice plan satisfied Rule 23 and due process. In the context of a class action settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (requiring same for due process); *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (holding that notice may be sufficient even if some class members do not receive actual notice). The Court previously approved the content of the class notice form and the method for directing notice to the class as "the best notice to reach the Settlement Class Members under the circumstances" and found that it satisfies "all applicable requirements of law." Preliminary Approval Order, ECF No. 94 at PageID 1793.

The Settlement Administrator has successfully implemented the court-approved notice plan. *See* Schneider Downs Decl. at 2–3. In total, the Settlement Administrator sent direct notice to 1,583 likely class members, including every class member for whom a mailing address was reasonably accessible. *See id.* at 2; S.A. at 2 ("Defendants, with the assistance of outside counsel, conducted an additional review of its records over the course of six weeks to determine Settlement Class Members and the acreage covered by Smith Goshen Leases and who should receive Class Notice."). The Settlement Administrator also maintained a website and telephone line to provide additional information to class members. *See* Schneider Downs Decl.

at 2. Therefore, the class received robust notice, consistent with the requirements of due process. *See In re Cinfed Fed. Credit Union Data Breach Litig.*, 2024 U.S. Dist. LEXIS 246175, *23 (S.D. Ohio Sept. 10, 2024) ("[T]he notice plan, which predominately relies on mailing notice, supplemented with a settlement website and telephone hotline, is reasonably calculated to reach the class members and takes the same approach as many other notice plans.").

## III. The settlement is fair, reasonable, and adequate.

A class action settlement may only be approved if it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In this case, the proposed settlement satisfies both the seven factor test set forth in *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007), and the four factor test established by the 2018 amendment to Rule 23.[3]

### A. The *UAW* factors are satisfied.

The settlement is fair, reasonable, and adequate under the *UAW* factors. To determine whether a settlement is fair, reasonable, and adequate, courts in the Sixth Circuit consider seven factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631; *accord Doe v. Déjà Vu Consulting, Inc.*,

---

[3] Some courts in this district have held that the *UAW* factors are subsumed by Rule 23(e)(2). *See, e.g., Carmen v. Health Carousel, LLC*, 2025 U.S. Dist. LEXIS 53761, *28 n.8 (S.D. Ohio Mar. 24, 2025) (Cole, J.) (noting that the court would "refer only to the Rule 23 factors in its analysis" due to the "redundancy" between the two tests). Nevertheless, the Sixth Circuit has continued to reference the *UAW* factors. *See In re E. Palestine Train Derailment*, 158 F.4th 704, 2025 U.S. App. LEXIS 29014, *13–14 (6th Cir. Nov. 5, 2025) (noting that courts "consider the factors identified in Rule 23(e)(2), as well as" the *UAW* factors). Therefore, Plaintiffs will address both tests.

925 F.3d 886, 894 (6th Cir. 2019); *Hafley v. Amtel, LLC*, 2024 U.S. Dist. LEXIS 91578, *6 (S.D. Ohio May 21, 2024). Each factor is satisfied here.

### 1. The settlement is free of fraud and collusion.

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "[T]his Court 'begins from a presumption that there was no fraud or collusion, absent evidence to the contrary.'" *Hafley*, 2024 U.S. Dist. LEXIS 91578, *7 (quoting *Hunter v. Booz Allen Hamilton Inc.*, 2023 U.S. Dist. LEXIS 76859, *19 (S.D. Ohio May 2, 2023)). "The participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Andrews* v. *State Auto Mut. Ins. Co.*, 2023 U.S. Dist. LEXIS 191571, *11 (S.D. Ohio Oct. 25, 2023) (cleaned up). In this case, the Settlement was the result of intensive, arm's-length negotiations under the guidance of an experienced and independent mediator, which ensured that the parties' negotiations were at all times adversarial. *See* Perry Decl. at ¶¶ 2–6; S.A. at pp. 1–2; Joint Decl. at ¶¶ 39–46. This factor favors final approval.

### 2. Continued litigation would be complex, expensive, and time-consuming.

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. "Generally speaking, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Miranda v. Xavier Univ.*, 2023 U.S. Dist. LEXIS 178072, *11 (S.D. Ohio Oct. 3, 2023) (quoting *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)). This case was no exception, as it involved complex issues related to oil-and-gas production, marketing, and valuation. *See* Joint Decl. at ¶ 31; *see also, e.g.*, *Thacker v. Chesapeake Appalachia, LLC*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010) (noting that oil-and-gas royalties class action "was extremely complex, both factually and legally"); *Schulein v. Petroleum Dev. Corp.*, 2015 U.S.

19

Dist. LEXIS 186857, *18 (C.D. Cal. Mar. 16, 2025) (noting that "[t]his case is also complex, dealing with technical issues in the oil and gas industries, and complicated financial valuations"); *Donald D. Miller Revocable Family Trust v. DCP Operating Co., LP*, 2021 U.S. Dist. LEXIS 245982, *17 (E.D. Okla. June 29, 2021) (noting that "[r]oyalty cases" are often "complex," as "[t]hey generally involve all the complexities involved in the marketing and production systems for oil or gas"). As a result, this case was also expensive to litigate, as the parties had to take extensive discovery and employ multiple expert witnesses. *See* Joint Decl. at ¶¶ 31–38.

Moreover, if this case had proceeded further in litigation, Defendants would have challenged Plaintiffs' motion for class certification, moved for summary judgment, and opposed Plaintiffs' claims at trial. *See* Joint Decl. at ¶ 48. Indeed, Defendants have demonstrated their willingness to litigate oil-and-gas cases in Ohio through class certification, trial, and appeal—and win. *See, e.g.*, *Tera, LLC v. Rice Drilling D, LLC*, 176 Ohio St.3d 505 (2024) (vacating jury verdict in favor of plaintiffs on trespass claims); *J&R Passmore, LLC v. Rice Drilling D, LLC*, 2023 U.S. Dist. LEXIS 53543 (S.D. Ohio Mar. 28, 2023) (Marbley, J.) (denying plaintiffs' motion for class certification in trespass case); *Tera II, LLC v. Rice Drilling D, LLC*, No. 2:21-cv-2221, ECF No. 689 (S.D. Ohio Mar. 1, 2024) (jury verdict in favor of Defendants on trespass claims). In addition, it would likely take more than a year for the parties to brief class certification and summary judgment and to obtain rulings from the court. This means that a jury trial likely could be held no earlier than 2027. Therefore, the complexity, expense, and delay that would accompany further litigation demonstrates that the settlement is fair, reasonable, and adequate. *See* Joint Decl. at ¶¶ 47–50; Perry Decl. at ¶ 6 ("Based on my experience as a mediator, the settlement is a fair, reasonable, and adequate resolution of litigation that would otherwise be expensive, time-consuming, and uncertain.").

20

### 3.    The parties took extensive discovery.

The third *UAW* factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. This factor favors approval if the plaintiff had "adequate information to assess her case and the desirability of a settlement agreement." *Allen v. Shamrock Towing, Inc.*, 2023 U.S. Dist. LEXIS 153003, *8 (S.D. Ohio Aug. 29, 2023). This case settled only after discovery was essentially complete, and the parties had exchanged thousands of documents and deposed fact and expert witnesses. Joint Decl. at ¶¶ __. Therefore, this factor favors approval. *See Thacker*, 695 F. Supp. 2d at 532 (holding that this factor favored approval because "the parties engaged in significant investigation and discovery in this matter, including exchange of documents, depositions of Class Representatives and Defendants' personnel, a full review and analysis of approximately 1,200 oil and gas leases between Defendants and their Kentucky lessors, and a full review and analysis of the proceedings, evidence, and rulings in the other class actions for underpayment of royalties").

### 4.    The class faced significant litigation risk.

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. When evaluating this factor, "the district court's mission is not to discern whether the theoretical 'median' claimant would have accepted these settlement terms. Nor must a district court employ an economic model to predict the most desirable decision for the class, plugging risk facts into an algebraic formula. Rather, the district court merely seeks fair assurance that a settlement falls within the 'ballpark of reasonableness.'" *Wayside Church v. Van Buren County*, 2025 U.S. App. LEXIS 26081, *49 (6th Cir. Oct. 6, 2025) (unpublished) (internal citations omitted).

Plaintiffs, while confident in the strength of their case, faced significant risk. *See* Joint Decl. at ¶ 48. If this case had continued through litigation, Defendants would have opposed Plaintiffs' motion for class certification. If Defendants had prevailed, absent class members would have recovered nothing at all. *Cf. J&R Passmore, LLC*

*v. Rice Drilling D, LLC*, 2023 U.S. Dist. LEXIS 53543 (S.D. Ohio Mar. 28, 2023) (Marbley, J.) (denying plaintiffs' motion for class certification in trespass case). In addition, Defendants likely would have filed a motion for summary judgment raising issues such as the existence of a breach of contract and damages. And even if Plaintiffs prevailed on summary judgment, they still would have needed to persuade a jury of the strength of their claims, which is no sure thing. *Cf. Tera II, LLC v. Rice Drilling D, LLC*, No. 2:21-cv-2221, ECF No. 689 (S.D. Ohio Mar. 1, 2024) (jury verdict in favor of Defendants on trespass claims). And even if Plaintiffs ultimately prevailed at trial after several years of additional litigation, they still would face the looming risk of appeal, which could wipe out their claims entirely. *Cf. Tera, LLC v. Rice Drilling D, LLC*, 176 Ohio St.3d 505 (2024) (vacating jury verdict in favor of plaintiffs on trespass claims).

In the face of those risks, this settlement provides class members with immediate and significant relief. *See* Joint Decl. at ¶¶ 49–50. Therefore, this factor favors approval. *See Hunter*, 2023 U.S. Dist. LEXIS 76859, *21 (holding that this factor favored approval because "[t]here are many issues still outstanding, including the threshold matter of class certification, various evidentiary disputes, summary judgment, and the amount of damages (if any) caused by Defendants' actions").

### 5. Class counsel and the class representatives believe that the settlement is in the best interest of the class.

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "As a general matter, '[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Clark v. Miller Valentine Partners LTD II*, 2023 U.S. Dist. LEXIS 141941, *18 (S.D. Ohio Aug. 8, 2023) (quoting *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)). Here, Class Counsel are experienced in this type of litigation. *See* Joint Decl. at ¶¶ 5–11 (describing experience with class actions); *id.* at ¶¶ 12–18 (experience with

oil-and-gas matters); *id.* at ¶¶ 19–20 (experience with complex litigation). With the benefit of full discovery (*see supra* Part III.A.3; Joint Decl. at ¶ 40), they have concluded that the settlement is in the best interests of the class. *See* Joint Decl. at ¶¶ 47–50. The class representatives have reached the same conclusion. *See Wilder v. Kroger Co.*, 2025 U.S. Dist. LEXIS 232811, *21 (S.D. Ohio Nov. 26, 2025) (noting that the "class representatives have attested that they believe the Settlement Agreement is appropriate by signing it"). This factor favors approval.

### 6. Class members have reacted favorably to the settlement.

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In this case, the class has reacted favorably to the settlement, as the overwhelming majority of class members chose to remain in the class, and the only objections to the settlement are unpersuasive. Therefore, this factor favors approval.

### a. The overwhelming majority of class members chose to remain in the class.

The Settlement Administrator sent notice to over 1,500 likely class members, and only 83 submitted valid opt-out requests. Schneider Downs Decl. at 4; *see also Wayside Church v. Van Buren County*, 2025 U.S. App. LEXIS 26081, *49 (6th Cir. Oct. 6, 2025) (unpublished) ("We do not doubt that some parties facing similar circumstances, perhaps like those who opted out of the class here, might decide to accept these risks and hold out for the chance at a larger payment. That is the nature of risk; people tolerate it differently."). The fact that an overwhelming majority of class members chose to remain in the class weighs in favor of approval. *See In re Polyurethane Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 23482, *18 (N.D. Ohio Feb. 26, 2015) (holding that the class "reacted favorably to news of the settlement" because "the overwhelming majority . . . opted to remain members of the settlement classes"); *Daoust v. Maru Rest., LLC*, 2019 U.S. Dist. LEXIS 111222, *7 (E.D. Mich. July 3, 2019) ("'The fact that the vast majority of class members neither objected nor

opted out is a strong indication' of fairness."); *cf. TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 462–463 (2d Cir. 1982) (explaining that even "majority opposition to a settlement cannot serve as an automatic bar" to approval, as "[p]reventing settlement in such circumstances not only deprives other class members of the benefits of a manifestly fair settlement and subjects them to the uncertainties of litigation, but, in this case, would most likely have resulted in the eventual disappointment of the objecting class members as well").

### b. The only objections to the settlement are unpersuasive.

Two class members submitted an identical objection. Schneider Downs Decl. at 3 & Exhibit D. That is not unusual for a class action settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("A certain number of opt-outs and objections are to be expected in a class action."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998) ("In litigation involving a large class it would be 'extremely unusual' not to encounter objections."). Neither objector can overcome the "heavy burden" necessary "to prove that the settlement is unreasonable." *Emch v. Cmty. Ins. Co.*, 2021 U.S. Dist. LEXIS 259769, *1 (S.D. Ohio Aug. 6, 2021); *accord, e.g.*, *Amos v. PPG Indus.*, 2015 U.S. Dist. LEXIS 106944, *16 (S.D. Ohio Aug. 13, 2015) ("A settlement is 'presumptively reasonable' once preliminary approval is entered, and '[a]n individual who objects, consequently, has a heavy burden of demonstrating that the [settlement] is unreasonable.'"); *Koenig v. USA Hockey, Inc.*, 2012 U.S. Dist. LEXIS 207799, *13 (S.D. Ohio Jan. 10, 2012) (same); *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829, *16 (S.D. Ohio Jan. 25, 2011) (same); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) ("With such preliminary approval, the settlement is presumptively reasonable, and an individual who objects has a heavy burden of proving the settlement is unreasonable."); *Brotherton v. Cleveland*, 141 F. Supp. 2d

894, 904 (S.D. Ohio 2001) (same); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (similar).

The Objectors state that "it appears that the Defendant, Rice Drilling D, LLC, et al (assume this includes EQT, Inc.) improperly calculated royalties owed to the lessors for seven years," and that these calculations "appear to be deemed a breach of the contract." Exhibit D to Schneider Downs Decl. at 2. In Objectors' view, "[i]t was defendants past egregious miscalculations which gave rise to this class action," so "the burden of the legal fees incurred by the plaintiffs to recover past-due monies due should be borne by the defendants Rice Drilling, D, LLC et al," in order "to make the Settlement Class whole." *Id.* at 2–3.

This objection misunderstands several points. First, Defendants' conduct has not been "deemed a breach of the contract." *Id.* at 2. Rather, Plaintiffs *alleged* that Defendants breached the contract; they have not proven it. Instead, the parties have agreed that "this Settlement Agreement constitutes a compromise of highly disputed claims, and that neither (a) the consideration provided for herein, (b) the entry into the Settlement Agreement or stipulation to the Final Judgment, nor (c) any recital contained herein, will be construed, interpreted, or admissible as an admission of liability by or on behalf of any Party hereto, all such liability being expressly denied, regardless of whether this Settlement Agreement becomes Final." S.A. § 15; *see also* Preliminary Approval Order, ECF No. 94 at PageID 1789 (finding that the issues in this litigation "were hotly litigated and/or otherwise disputed by Defendants"). The fact that the settlement reflects a compromise in which neither party received everything it wanted is not a basis for denying approval; to the contrary, that is why it should be approved. *See Rikos v. Procter & Gamble Co.*, 2018 U.S. Dist. LEXIS 72722, *30 (S.D. Ohio Apr. 30, 2018) (overruling objection "because class action settlements represent a *compromise* of disputed claims"). Thus, the objection is based on a misunderstanding of the settlement. *See UAW*, 497 F.3d at 632 ("Our task is not

25

to decide whether one side is right or even whether one side has the better of these arguments. Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement. The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement.").

Second, the objection states that the settlement should "make the Settlement Class whole." Exhibit D to Schneider Downs Decl. at 2. But "[a] court may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *see also Rikos*, 2018 U.S. Dist. LEXIS 72722, *30 ("[T]he Court finds the Settlement to be fair, reasonable and adequate. The fact that the Settlement Class Members will not be compensated for all of their alleged damages does not change that conclusion."). Plaintiffs would have liked nothing more than to have made every class member whole. But the "desire to receive 'more' money or a 'better' result is not a proper objection." *Braynen v. Nationstar Mortg., LLC*, 2015 U.S. Dist. LEXIS 151744, *37 (S.D. Fla. Nov. 9, 2015); *see also In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) ("The objectors' armchair-quarterbacking and wishing-for-more does not provide valid grounds to disapprove the settlements."); *Manjunath A. Gokare, P.C. v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 203546, *41 (W.D. Tenn. Nov. 22, 2013) (overruling objection that merely made the "general claim that the relief provided to the Settlement Class is insufficient").

Third, the objectors state that they "could not determine the legal basis for the $450 per-acre bonus payment to the members of the Settlement Class. If this bonus is meant to correct a previously missed payment, then the reasoning above also applies." Exhibit D to Schneider Downs Decl. at 3. This payment provides class members with an additional "bonus" in exchange for the release of their claims; it is not a correction for a previously missed payment. Plaintiffs believe that a settlement

based on both the amount of gas extracted, as well as on the amount of land at issue in the lease, is a reasonable and fair way to calculate payments to class members.

Therefore, the Court should overrule the objections and hold that the reaction of the settlement class as a whole supports settlement approval. *See In re Cardizem*, 218 F.R.D. at 527 ("That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'"); *Brotherton*, 141 F. Supp. 2d at 906 ("The fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement.").

### 7. The settlement is in the public interest.

The final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Pansiera v. Home City ICE Co.*, 2024 U.S. Dist. LEXIS 33358, *12 (S.D. Ohio Feb. 27, 2024) (quoting *In re Cardizem*, 218 F.R.D. at 530); *see also Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1094 (6th Cir. 2016) (noting "the 'particularly muscular' presumption in favor of settlement in class-action litigation"). By settling now, both parties will be spared the expense and delay of further litigation. *See Pavlov v. Cont'l Cas. Co.*, 2009 U.S. Dist. LEXIS 150346, *26 (S.D. Ohio Oct. 7, 2009) (holding that settlement "serves the public interest by conserving the resources of the parties"). In addition, the Court will be spared the burden of complicated motion practice and holding a jury trial. *See Allen*, 2023 U.S. Dist. LEXIS 153003, *11 ("Settlement of this matter without further motions practice and a jury trial reduces strain on this Court and its docket."). Therefore, the settlement is in the public interest and should be approved as fair, reasonable, and adequate under *UAW*.

**B. The Rule 23(e)(2) factors are satisfied.**

The proposed settlement is also fair, reasonable, and adequate under FED. R. CIV. P. 23(e)(2). Rule 23(e)(2) instructs courts to consider "whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the settlement adequately compensates the class; and (4) the settlement treats class members equitably relative to each other." *Tate v. Eyemed Vision Care, LLC*, 2025 U.S. Dist. LEXIS 145042, *18 (S.D. Ohio July 29, 2025). This settlement satisfies each of those requirements.

**1. The class has been adequately represented.**

The first Rule 23(e)(2) factor is whether "the class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). In this case, Class Counsel are highly qualified and vigorously litigated this case through the class certification and *Daubert* stage. *See supra* Parts I.D, III.A.3, III.A.5; Joint Decl. at ¶¶ 5–20. The class representatives have also ably represented the interests of absent class members and do not have any conflicts of interest. *See supra* Part I.D; Joint Decl. at ¶¶ 27–29. Therefore, Class Counsel and the class representatives have adequately represented the interests of the class.

**2. The settlement was negotiated at arm's length.**

The second Rule 23(e)(2) factor is whether "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). This factor weighs in favor of approval when the parties reached their agreement through an adversarial mediation process. *See* FED. R. CIV. P. 23, advisory committee note to 2018 amendment (noting that "the involvement of a neutral or court-affiliated mediator" suggests that the negotiations "were conducted in a manner that would protect and further the class interests"). As discussed above, the parties negotiated the settlement with the assistance of an experienced mediator, and there was neither fraud nor collusion. *See supra* Part

28

III.A.1; Joint Decl. at ¶¶ 39–46; Perry Decl. at ¶¶ 2–6. Therefore, this factor favors approval.

### 3. The settlement provides adequate relief.

Rule 23(e)(2)(C) instructs courts to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The relief provided by this settlement is more than adequate under that rubric. First, further litigation would have been expensive, risky, and time consuming for class members. *See supra* Parts III.A.2, III.A.4; Joint Decl. at ¶¶ 47–50. Second, the method for distributing relief to class members is straightforward, as the Settlement Administrator will simply mail each class member a check. *See* Exhibit E to S.A. at ¶ 1; *Thompson v. Seagle Pizza, Inc.*, 2022 U.S. Dist. LEXIS 81666, *25 (W.D. Ky. May 4, 2022) (holding that Rule 23(e)(2)(C)(ii) was satisfied because "the settlement administrator will mail a check directly to each participating class member shortly after the settlement agreement is approved"). Third, the proposed award of attorney's fees is fair and reasonable. *See* Unopposed Motion for Attorneys' Fees, ECF No. 96; *Ware v. CKF Enterprises, Inc.*, 2020 U.S. Dist. LEXIS 82879, *45 (E.D. Ky. May 12, 2020) ("[T]he one-third common fund award is reasonable and weighs toward adequacy of relief for the purposes of Rule 23(e)(2)(C)(iii)."). Fourth, the parties have not entered any side-agreements subject to disclosure under Rule 23(e)(3). Therefore, the relief provided by the settlement is adequate under Rule 23(e)(2)(C).

29

### 4. The settlement treats class members equitably.

The final Rule 23(e)(2) factor is whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). "This factor 'ensure[s] that similarly situated class members are treated similarly.'" *Plagens v. Deckard*, 2024 U.S. Dist. LEXIS 84140, *27–28 (N.D. Ohio May 9, 2024) (quoting 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:56 (6th ed. 2022)). In this case, the common fund will be divided pro rata among Settlement Class Members, with each member's proportional share determined by the amount of production they were paid on and the net mineral acres they own in Production Units which are covered by a Smith Goshen lease. S.A. § 5.2. This ensures that each Settlement Class Member's payment will be roughly proportional to their damages. Therefore, the settlement treats class members equitably and reasonably accounts for the differences in their individual losses. *See Wayside Church v. Van Buren County*, 2025 U.S. App. LEXIS 26081, *50 (6th Cir. Oct. 6, 2025) (unpublished) (holding that this factor was satisfied because claimants received a "proportionate share" based on their individual property values, which "ensured that all claims were treated similarly, aligning the interests of all class members"); *Plagens*, 2024 U.S. Dist. LEXIS 84140, *28 (holding that this factor was satisfied because "claimants who suffered losses on their securities during the settlement class period will receive a *pro rata* distribution of the funds, proportional to their loss amount," which accounts for the differences in each class member's "individual losses compared to those of others"). Thus, the Court should approve the settlement as fair, reasonable, and adequate under FED. R. CIV. P. 23(e)(2).

### CONCLUSION

The Court should grant Plaintiffs' motion for final approval.

Dated: January 5, 2026

Respectfully submitted,

By: /s/ *Matthew R. Wilson*

Matthew R. Wilson (72925)*
Jared W. Connors (101451)
MEYER WILSON WERNING CO., LPA
305 W. Nationwide Blvd
Columbus, OH 43201
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
E-Mail: mwilson@meyerwilson.com
        jconnors@meyerwilson.com

Sean E. Jacobs (88351)
EMENS WOLPER JACOBS & JASIN
LAW FIRM CO., LPA
One Easton Oval, Ste. 340
Columbus, OH 43219
Telephone: (614) 414-0888
Facsimile: (614) 414-0898
E-Mail: sjacobs@ewjjlaw.com

Scott K. Jones (69859)
SCOTT K. JONES LAW, LLC
3825 Edwards Rd., Suite 103
Cincinnati, OH 45209
Telephone: (513) 410-2074
Facsimile: (513) 536-6393
E-Mail: sjones@scottkjoneslaw.com

*Trial Attorney

*Counsel for Plaintiff and the Proposed
Class*

**CERTIFICATE OF SERVICE**

I certify that on January 5, 2026 the foregoing was filed using the Court's CM/ECF system and will therefore be electronically served to Defendants' counsel of record.

I further certify that the foregoing was served via U.S. mail to Objectors at their last known addresses:

Marcia N. Nigro
P.O. Box 26
8 Knight Lane
Wateford, ME 04088

Vasi Laurence Ilioff
881 10th Ave, #1B
New York, NY 10019

/s/ *Matthew R. Wilson*
Matthew R. Wilson